## DE LONG v. JEFFERSON STANDARD LIFE INS. CO.
### No. 9239.

Circuit Court of Appeals, Fifth Circuit.
Feb. 19, 1940.

Rehearing Denied March 15, 1940.

Charles Cook Howell and Charles Cook Howell, Jr., both of Jacksonville, Fla., and Stafford Caldwell, of Tallahassee, Fla., for appellant.

Giles J. Patterson, of Jacksonville, Fla., and C. R. Wharton, of Greensboro, N. C., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This appeal presents for review the rulings of the trial court in denying the motion of appellant, and granting the motion of appellee, for a directed verdict in an action by appellant, as beneficiary, to recover on a life insurance policy issued by appellee on January 23, 1924.

Insured paid all premiums due thereon until January 23, 1935, but never paid the premium due on that date, nor did he pay the interest then due on the outstanding loans against the policy. He died on Febru-

ary 25, 1935, thirty-three days after the due date of the unpaid premium. On January 23, 1935, the cash value of the policy was $6,000. The indebtedness (principal and interest) outstanding against it on that date totalled $5,936.40, leaving a net cash value of $63.60, which was sufficient to keep the policy in force beyond the date of death, if applied to the purchase of extended insurance, unless interest on the loans continued to accrue from January 23, 1935, until the insured died.

Appellee contends that the case should be affirmed on either or both of two grounds: First, that the premium loan clause of the policy automatically continued the policy in force for the portion of the year that $63.60 bore to the full annual premium, which would be only twenty-five days after default; and, second, that interest continued to accrue under the policy provisions on the loans secured thereby up to and until the date of the insured's death; that, after deducting said accrued interest from the net cash value, only $34.79 could be applied to the purchase of extended insurance; that said sum would only purchase extended insurance for twenty-five days, or to February 17th; and that, therefore, the policy lapsed at the expiration of the grace period, which was February 23rd, two days prior to insured's death.

■ Our jurisdiction is predicated solely upon diversity of citizenship. This is a Florida contract, and the law of that state must be applied in construing the relevant portions thereof. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Jacobs v. Merchants Fire Assurance Corp., 5 Cir., 99 F.2d 655; Stanford v. Atlantic Life Insurance Company, January, 1940, 5 Cir., 109 F.2d 428. The policy contained nonforfeiture provisions[1] which, when read together, show that the insured, upon nonpayment of the premium due January 23, 1935, had sixty days from that date within which to elect one of three different disposals of the surrender value: cash, extended insurance, or paid-up nonparticipating insurance. Omaha National Bank v. Mutual Benefit Life Insurance Co., 3 Cir., 84 F. 122; Joyner v. Jefferson Standard Life Insurance Co., 5 Cir., 53 F.2d 745. Insured did not make an election, but died within the sixty-day election period, and the law immediately selected the option most beneficial to him. Equitable Life Insurance Company v. Germantown Trust, 3 Cir., 94 F.2d 898; Afro-American Insurance Company v. LaBerth, 136 Fla. 37, 186 So. 241. This election reverted to the time the unpaid premium was due, and excluded the automatic premium loan clause.

■ Appellee relies upon the case of Afro-American Life Insurance Company v. LaBerth, supra, as decisive of the Florida law, and cites other cases as follows: Willingham v. Equitable Life Insurance Co., 5 Cir., 86 F.2d 72; Mayers v. Massachusetts Mutual Life Insurance Company, D.C., 11 F.Supp. 80; Smith v. John Hancock Mutual Life Ins. Co., 195 Ark. 699, 114 S.W.2d 15. These latter cases may be distinguished in that in them the death of insured did not occur during the election period. It is true that, in the LaBerth case, interest was computed on the outstanding loans against the policy from the date of the unpaid premium down to the date of the insured's death; but the case was submitted upon an agreed statement of facts, and the computation was included therein. It was not made an issue in the case, and played no part in the determination thereof. It is not, therefore, authority binding upon this court. Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411; Satterlee et al. v. Harris et al., 10 Cir., 60 F.2d 490. We are cited, and can find, no Florida decision adjudicating the question, and are, therefore, at liberty to apply the law as we understand it to be in that state. So doing, we are unable to agree with the conclusion reached by appellee. It would be grossly unjust to compute the settlement as of January 23, 1935, and

---

[1] The policy is nonforfeitable as follows: "After three full years from the date hereof, if there be no indebtedness to the Company, the Insured shall within sixty days from the date of the nonpayment of any premium after the third, be entitled to a surrender value—in cash, paid-up, non-participating insurance, or extended insurance—as set forth in the table below. * * * If extended insurance is selected, such extended insurance will have a decreasing cash surrender value, expiring with the extension term. * * * Any indebtedness existing against this policy at the time of any settlement thereof shall be deducted from the Cash Surrender Value of the policy, and the other values shall be diminished proportionately."

not apply the available cash on the loan upon that date. With the money in its hands to pay the loan, the appellee should treat it as applied thereon at that time.

There is a provision, in case of default in the payment of any premium, that the policy shall cease and determine and the payments received thereon shall become the property of the company, except as specified on the second page. The second page referred to includes the nonforfeiture provisions previously quoted. There is a further provision that the payment of any installment shall not continue the policy in force beyond the due date of the next installment. From these provisions, it is manifest that the policy became forfeited on the date the unpaid premium was due, except for rights reserved thereunder by the grace period and the nonforfeiture provisions. Upon the expiration of the grace period, the election rights under the nonforfeiture provisions alone remained, and these rights were necessarily determined by the status of the policy on the date of the unpaid premium. It was conceded in argument that, if there had been no loan on the policy, the settlement would have been reckoned as of the due date of the unpaid premium. The appellee uses that date for all purposes of settlement except computing interest on the loan. The existence of a loan does not furnish the basis for a different date. The indebtedness against the policy is deemed to have been liquidated on that date by a charge against the cash value, and the balance represents the net cash value. Hawthorne v. Banker's Life Ins. Co., 8 Cir., 63 F.2d 971; Equitable Life Assurance Society v. Mac Kirgan, 5 Cir., 86 F.2d 271; Ratliff v. Kentucky Home Mutual Life Ins. Co., 5 Cir., 87 F.2d 965, 966; Pacific Mutual Life Ins. Co. v. Goss, 5 Cir., 99 F.2d 658. The appellee was required to hold that net cash value for sixty days, and dispose of it in one of three ways at the option of insured. The purchase of extended insurance with the $63.60 revived the policy for forty-four days after January 23, 1935, and insured died thirty-three days after said date. Thus the policy was in full force and effect at the time of the death of insured, and the directed verdict requested by the appellant in the court below should have been granted.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.