■ WHITEHALL PACKING CO., INC., Respondent, v FIRST NATIONAL CITY

BANK, Appellant.—In an action to recover damages for the negligent handling of certain sight drafts, the defendant appeals from (1) an order of the Supreme Court, Kings County, dated April 23, 1976, which (a) granted plaintiff's motion to the extent of granting it summary judgment with respect to the first three causes of action asserted in the complaint and (b) severed and continued the fourth cause of action and (2) the judgment entered thereon on April 27, 1976. Judgment and order reversed, on the law, with $50 costs and disbursements, and motion for summary judgment denied. Plaintiff, a meat packing firm, received three orders through a broker to sell meat to Trunz Inc. on the following terms for payment: "DRAFT: 1 ST NATIONAL CITY, BROOKLYN, NY." Plaintiff made three shipments of meat to Trunz by truck and, on each occasion, sent a sight draft to the defendant bank accompanied by an invoice for the meat. Each of these drafts was in substantially the following form:

"$[Price]                                      WHITEHALL, WIS. [Date]

PAY TO THE ORDER OF WHITEHALL PACKING CO. INC., P.O. Box 215, Whitehall, Wisconsin

[Price]                                                    DOLLARS

TO: FIRST NATIONAL BANK            Value received and charge the
                                                   same to the account of

Manhattan & Nobel St. Branch
Brooklyn, N.Y. 11208                         /s/Roger A. Misch
                                                   Authorized Signature"

Upon receipt of these drafts, the defendant contacted Trunz and was told to hold them without making payment. Each of the drafts was held for more than 30 days; they were finally returned unpaid to plaintiff at its request. During the period that the bank held the checks, the assets of the insolvent Trunz were sold pursuant to the Bulk Sales Law. Plaintiff has now brought suit on the drafts, claiming that defendant was a "payor bank", and that by failing to either pay or return them dishonored before its midnight deadline, the defendant became liable thereon. The fourth cause of action, severed by Special Term, alleged that defendant delayed action on the items, in bad faith, because it was a major secured creditor of Trunz, and that by failing to timely notify plaintiff that the drafts had been dishonored, it induced further shipments and increased its own security in the inventory of Trunz. Special Term was correct in holding that defendant was not a "payor bank", which is defined as "a bank by which an item is payable as drawn or accepted" (Uniform Commercial Code, § 4-105, subd [b]). Although the drafts stated that they are payable at the defendant bank, this is not determinative. The items must fall due out of funds of the maker in current account or which are otherwise available for payment, i.e., funds of Trunz, specifically deposited to plaintiff's credit (see Uniform Commercial Code § 3-121; 41 NY Jur, Negotiable Instruments, § 99). Here there was no fund out of which plaintiff had the right to direct defendant to make payment. The following circumstances therefore indicate that defendant was a "collecting bank" and that Trunz was the drawee: (1) the portion of the draft which directed the payor to charge a certain account was left blank; (2) the drafts were accompanied by invoices covering shipments of meat to Trunz; and (3) plaintiff originally thought shipment was to be by rail and notified the bank to hold the invoice and bill of lading until it had collected the first draft from Trunz. As a collecting bank, defendant was obligated to exercise

ordinary care in presenting the draft for payment. Ordinary care obligates a collecting bank to take seasonable action on the item (Uniform Commercial Code, § 4-202). If the bank acts on the item by midnight of the next banking day following the banking day upon which the item was received, it acts seasonably, however, action after a reasonably longer period may be seasonable (Uniform Commercial Code, § 4-202, subd [2]). Here the delay exceeded 30 days. The bank claims that this delay was reasonable because of the financial situation of Trunz. This was a question of fact for the jury which precludes summary judgment. Furthermore, it was error to grant judgment for the face value of the drafts, with interest, without an inquest, as questions of fact exist as to whether plaintiff could have realized this sum if the bank had given notice of dishonor sooner than it did. The measure of damages for the failure of a collecting bank to use ordinary care in the handling of an item is "the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by a party as a proximate consequence" (Uniform Commercial Code § 4-103, subd [5]). Latham, Acting P. J., Damiani, Hawkins and O'Connor, JJ., concur.