FIRST STATE BANK OF SHERWOOD *v.* TWIN CITY
BANK OF NORTH LITTLE ROCK

86-121                                          720 S.W.2d 295

Supreme Court of Arkansas
Opinion delivered December 8, 1986

*Gruber Law Office*, by: *Rita W. Gruber*, for appellant.

*Friday, Eldredge & Clark,* by: *George Pike, Jr.* and *William A. Waddell, Jr.,* for appellee.

JACK HOLT, JR., Chief Justice. This case concerns the question of liability as between two banks victimized by a fraudulent scheme involving the use of documentary drafts. The trial court found that the bogus documentary drafts were not documentary drafts (as defined by the Uniform Commercial Code), but mere writings used in a fraudulent scheme. The court concluded that, although Twin City Bank, the payor/drawee bank, was late in returning the "drafts" unpaid to First State Bank of Sherwood, the depositary/collecting bank, the writings used in the scheme were not documentary drafts. As such, the court held the UCC provision making a payor bank accountable for late return did not apply and the depositary bank was left with the loss. We disagree and reverse and remand. This case was certified to this court by the court of appeals pursuant to Sup. Ct. R. 29(1)(c) and (4)(b).

Joseph Tucker, d/b/a Tucker's Used Cars, was a customer of First State Bank of Sherwood (FSB), appellant. Tucker wrote and presented to FSB three drafts payable to Tucker's Used Cars on the account of Bobby Brant of B&B Auto Sales, a customer of appellee, Twin City Bank of North Little Rock (TCB). The drafts were written on the backs of envelopes, which were represented as containing car titles to be delivered against honor of the drafts. Although it was later discovered that there were no car titles inside the envelopes, the drafts appeared regular on their face. FSB, unaware of the bogus nature of the drafts, gave Tucker immediate credit upon presentment. FSB then forwarded the drafts to appellee Twin City Bank (TCB), which held the account upon which the drafts were drawn.

The transmittal letter sent with the drafts instructed the payor bank, TCB, not to hold them for over 48 hours. The trial court found through testimony that FSB extended this time limit to three days. The first two drafts were received by TCB on June 21, 1982 and returned unpaid and marked "Customer refused" on June 25, 1982. A notation on the letter indicated that TCB called, presumably to give notice, on June 24. The third draft was received by TCB on June 24, 1982 and returned unpaid on July 1, 1982.

FSB sought to recover $26,150, the full amount of the three drafts, under Ark. Stat. Ann. § 85-4-302 (Repl. 1961), which states:

> Payor bank's responsibility for late return of item. In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of Section 4-207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of
>
> (a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or
>
> (b) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents. [Acts 1961, No. 185, § 4-302.]

Contrary to the findings of the trial court, the writings in question were, in fact, documentary drafts. Documentary drafts are defined as "any negotiable or non-negotiable draft with accompanying documents, securities or other papers to be delivered against the honor of the draft." Ark. Stat. Ann. § 85-4-104(1)(f).

■ The trial court held that neither the discovery of the fraudulent character of the drafts nor the return of the notices of dishonor by TCB was within the time specified, but that the claim of FSB should fail because "the 'drafts' handled by it and for which it now seeks recovery were not in fact drafts but to the contrary were mere writings used in a fraudulent scheme." We hold that because these items were, on their face, documentary drafts, which were not known by FSB to be unauthorized until TCB tardily sent notice of their fraudulent nature, the strict requirements of § 85-4-302(b) apply and make TCB accountable for the drafts. *Hamby Co.* v. *Seminole State Bank*, 652 S.W.2d 939 (Tex. 1983); *Union Bank of Benton* v. *First National Bank*,

621 F.2d 790 (5th Cir. 1980).

■ TCB contends that § 85-4-302(b) is inapplicable because these drafts were not "properly payable" as required by that section. Such is not the case. Joseph Tucker, had on other occasions, drawn drafts on Bobby Brant's account and in this instance the documentary drafts were regular on their face. FSB had a right to assume that if these drafts were not returned unpaid within the time specified that they were authorized and therefore properly payable. Because it was late notifying FSB, TCB is accountable for the amount of the documentary drafts.

■ TCB also argues that the trial court should be affirmed because FSB failed to use ordinary care in giving immediate credit to Tucker, and because FSB has already recovered from Tucker any losses it suffered. The trial court did not reach these issues because of its decision that FSB had no cause of action under § 85-4-302(b). Even if the evidence reflects that FSB was negligent, this argument would fail because the liability created by § 85-4-302(b) is a statutory liability and is independent of liability based upon negligence. *Union Bank of Benton, supra; New Ulm State Bank* v. *Brown,* 558 S.W.2d 20 (Tex. 1977); *Hamby, supra.* This principle was explained in *State and Savings Bank* v. *Meeker,* 469 N.E.2d 55 (Ind. App. 1984) as follows:

> Also, it is crucial that business transactions involving negotiable instruments become final at a certain point and therefore the U.C.C. imposes automatic liability after the passage of specific time limits. . . . If banks were allowed to retain instruments beyond the time specified in the U.C.C. and avoid liability on equitable grounds, finality and certainty would not exist in the business world. Therefore, State and Savings Bank cannot avoid the strict liability imposed by U.C.C. 4-302 on equitable grounds.

The only defenses available to TCB would be a breach of the presentment warranty by FSB, or those defenses found in § 85-4-108(2), which TCB has not asserted. *Hamby, supra.*

■ If TCB's final assertions are correct, FSB should not be allowed to recover twice for the loss incurred by giving credit on the bogus drafts. *Starcraft Co.* v. *C.J. Heck Co. of Texas, Inc.,* 748 F.2d 982 (5th Cir. 1984); *State and Savings Bank, supra;*

*Hamby, supra.* Because the trial court did not reach this issue, it should be decided on remand to what extent, if at all, FSB has been compensated for its loss through other sources. *Union Bank of Benton, supra.*

Reversed and remanded.